Caruthers, J.,
delivered the opinion of the Court.
The defendants being directors of the Bank of Tennessee at its branch at Clarksville, in March, 1842, executed and filed the following instrument:
“ The undersigned, directors of the Bank of Tennes- *74 “ see, at Clarksville, in their own opinion, went beyond “ their official duty in discounting a note this day for “ A. H. Cromwell, endorsed by B. H. Logan, Thomas “Williamson, and John McKeage, under extraordinary “ circumstances, consider themselves individually bound “ for their equal proportion of said debt, should it, or “ any part of it, under any circumstances, be lost to “the bank.
“ Clarksville, March 5th, 1842.”
This paper was signed under seal by W. B. Johnson, Thomas W. Barksdale, N. E. Trice, John H. Poston, and P. Peaeher.
The note was for $4,000, and due in four months, and had been discounted but the money not paid out, when the above instrument Avas executed.
The parties to the note all failed, and only a part of the amount was collected. This bill is filed to make the defendants liable for the balance upon their written undertaking above set forth.
Various grounds of defense are assumed, and relied upon in the ansAver. The Chancellor considered some of them sufficient and dismissed the bill. He thought they were bound by the writing, but had been discharged by act of the bank, in compromising with McKeage, one of the endorsers, for his indebtedness in this and various other matters, and releasing him from liability.
But in the argument here, a broader defense is insisted upon — first: That the instrument itself creates no obligation upon them upon its face, and if it did, it AYas without consideration, and therefore not binding upon them. Independent of the rule that a seal implies a consideration, there was here a sufficient consideration. *75 The undertaking was based upon an acknowledged violation of duty in their trust or agency, which might result in loss to their principal. They had loaned the money under their charge without sufficient security for its repayment; that was the breach of duty referred to as the ground of their obligation, improperly incurred by their act, and for which they were responsible in law. Addison on Con., 537. To indemnify the bank against this risk, they executed the paper. Any loss or injury to the promisee, as well as benefit, or without benefit to the promiser, will support a contract. Addison on Con., 17, 18. A violation of duty with injury, fills the definition.
But, does it create an obligation upon them by its terms ? There is no obligation expressly or in words assumed; nor is there any party named to whom they are to be bound. The words are “ we consider ourselves bound.” That is, upon due deliberation and reflection upon what we have done, we have arrived at the conclusion, and now solemnly declare it, for the benefit of the bank, that we are bound. In view of the dereliction of duty which they confessed, in the improper use of the money confided to them, which would probably result in loss, they certainly intended to perform some valid act, in the execution of this paper. They cannot now, that the injury has come, be allowed to say that their act was frivolous and nugatory. The intention of the parties must govern, where the words used are sufficient to sustain it. A sensible construction must be given to the language employed to effectuate this object. The words “we consider ourselves bound,” must, in this connection, be regarded as tantamount to “ we bind *76 ourselves.” But to whom are they hound ? Certainly to the hank, as effectually as if it had been so expressly written. “ The undersigned, directors of the Bank of Tennessee, at Clarksville, went beyond their duty in discounting a note,” &c., and for this breach of trust “we consider ourselves hound” for said debt, in the event of loss, &c. So, it is a perfect obligation to the bank, and must make them responsible for the loss of the debt, unless there is something else in the case to save them from liability. This, it is insisted, is found in the second ground of defense, which we will now proceed to consider:
Second: — After the bank had collected various amounts on this note, under the proceedings in bankruptcy, in the case of Cromwell and some of the other parties, it sued and obtained judgment against McKeage and Williamson; after several executions were returned nothing found, and the defendants regarded as utterly insolvent, a resolution was passed, under which McKeage was released from this, and all other liabilities, which were large, by the payment of three thousand dollars. Now, under these circumstances, does this have the effect to discharge the defendants from the obligation taken upon themselves, in the instrument upon which this suit is based? The doctrine on the subject of the effect of the discharge of one primarily liable, as relates to ordinary sureties or guarantors, is too well understood to be now discussed. But the undertaking of these defendants is neither a guaranty or suretyship, but an original, independent contract, by which they are bound for any loss which may, “ under any circumstances,” fall upon the Bank in consequence of their improper conduct in *77 the discharge of their trust. It is a written acknowledgment of an existing liability. The reference to the contingency, of loss by the failure of the parties to the paper improperly discounted, does not change its character so as to make it a mere guaranty. It is made exceedingly strong, under a high sense of the wrong they had done the bank in yielding to their kindly feelings towards a friend who was in need of assistance. It was honorable in them, thus to provide for the protection of the bank in all and every contingency, against any possible loss. But this meritorious act would lose all its virtue if it were now permitted to be taken back. They did what was right, and must be held to it, now that the pinch has come. The bank has waited long, and doubtless made every exertion to relieve these defendants from the performance of their obligation, by collection of the money from the parties. We are not prepared to say from the evidence, that the release of McKeage was not judicious. It seems that he had no property which an execution could reach, and it is most likely that no better arrangement could have been made with him, and that all would have been lost but for the compromise. But whether the adjustment was wise or not, the defendants do not stand in a position to object to it, or claim any advantage from the action of the bank’s consummation of it in discharging McKeage. It was their own confession of their improper conduct, which produced this whole difficulty, and it does not lie in their mouths to complain at the want of diligence on the part of the bank,, or to hold it to strict accountability for not collecting the money, or improperly releasing those to whom it had been loaned in violation *78 of duty. At all events, it would require a case of bad faith or gross mismanagement with loss, on the part of the hank, to create a ground of defense for these parties. Surely, they are not in a position to claim the application of the technical rule, that the release of one, liable in the first instance, without regard to the propriety of such release, would discharge them. Here, from all we can see, it was discreet to compromise with McKeage, as they did, and that whatever was procured from him was that much advantage to defendants. Whether the discharge of McKeage was valid and binding for want of consideration or seal, need not be considered, as it would not be material how that was, in view of the ground on which we have placed the case.
The decree will be reversed, and a reference made to ascertain how much of the $4,000 debt remains unpaid, and for that a decree will be entered against the defendants.